UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PEAKER ENERGY GROUP, L.L.C. & <br> ENERGY COAST LOGISTICS TERMINAL, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 14-2106 |
| CARGILL, INCORPORATED & <br> LOUISIANA SUGAR REFINING, L.L.C. | SECTION "N" (3) |

## ORDER AND REASONS

Presently before the Court is Defendant Cargill Incorporated's "Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Rec. Doc. 155) is presently before the Court. As stated herein, **IT IS ORDERED** that the motion is **DENIED**.

## BACKGROUND

Cargill's motion challenges the existence of diversity subject matter jurisdiction, pursuant to 28 U.S.C. §1332, in this action on two grounds. First, Cargill contends that attorney John Fay, a Louisiana domiciliary, owned a 2.5% equity interest in Plaintiff Energy Coast Logistics, Terminal, LLC ("ECLT"), at the time suit was filed, on September 12, 2014, such that diversity of citizenship is precluded by the presence of both a Louisiana plaintiff (ECLT) and a Louisiana defendant (Louisiana Sugar Refining, LLC ("LSR")).[1] Second, pointing to Defendant LSR's

---

[1] As recognized by the parties, the citizenship of limited liability companies ("LLC's") is that of each of its members. *See, e.g., Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, Ltd. Liability Corporation,* 757 F.3d 581 (5th Cir. 2014) (citing *Harvey v. Grey Wolf Drilling, Co.,* 542 F.3d 1077, 1080 (5th Cir. 2008)).

1

assertion that one of its two members, Sugar Growers and Refiners, Inc. (SUGAR),[2] has a Texas resident as a member,[3] Cargill argues that SUGAR should be treated as an unincorporated entity, with its citizenship being that of all of its members. If Cargill is correct, SUGAR, and thus LSR, would share Texas citizenship with Plaintiffs such that diversity would be absent and dismissal required.

Despite the ongoing dispute regarding Mr. Fay's alleged ownership of a equity interest in ECLT, none of the parties, as of mid-November 2016, had taken his deposition. Thus, to facilitate resolution of the instant motion, the Court, on November 17, 2016, ordered that the deposition be taken no later than December 1, 2016. Following Mr. Fay's November 28, 2016 deposition,[4] supplemental memoranda were submitted for the Court's consideration.[5]

## LAW AND ANALYSIS

The party asserting the existence of federal court jurisdiction bears the burden of proof for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). A Rule 12(b)(1) motion should be granted only when "it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter

---

[2] LSR's two members are Defendant Cargill and Sugar Growers and Refiners, Inc. ("SUGAR"). It is undisputed that Cargill is a corporation for purposes of diversity of citizenship subject matter jurisdiction. Accordingly, Cargill is a citizen of Delaware, its place of incorporation, and Minnesota, its principal place of business. *See Rec*. Doc. 115, ¶3; *see also Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016).

[3] *See* Rec. Doc. 182.

[4] See Rec. Doc. 359, Exh. I (transcript of Mr. Fay's November 28 deposition testimony).

[5] *See* Rec Docs. 312, 349, 359, 360, 361, 376.

jurisdiction." *Carroll v. Abide*, 788 F.3d 502, 504 (5th Cir. 2015) (internal quotations omitted). "In ruling on such a motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Davis v. United States*, 597 F.3d 646, 649-50 (5th Cir. 2009) (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)).

A defendant challenging the existence of subject matter jurisdiction may mount a "facial attack" or a "factual attack" upon the complaint under Federal Rule of Civil Procedure 12(b)(1). *See, e.g,.*, *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981). "[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.* If those jurisdictional allegations are sufficient the complaint stands." *Id.* A "'factual attack' upon the complaint, [however] 'challenges the facts on which jurisdiction depends and allows a court to consider matters outside of the pleadings, such as affidavits, testimony, or other evidentiary materials.'" *Eagle TX I SPE, L.L.C. v. Sharif & Munir Enter., Inc*., 602 F. App'x 576, 578 (5th Cir. 2015). Further, "when a defendant makes a factual attack, no presumptive truthfulness attaches to plaintiff's allegations." *Id.* at 579 (internal quotations omitted). Rather, the "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

In deciding a factual attack to subject matter jurisdiction, a federal district court may hold an evidentiary hearing, "hear conflicting written and oral evidence[,] and decide for itself the factual issues which determine jurisdiction." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.

3

1981); *see also Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003).[6] And, because "[j]urisdictional issues are for the court - not a jury - to decide, [regardless of] whether they hinge on legal or factual determinations," the court is "free to weigh the evidence."

### A. John Fay's Alleged 2.5% Equity Interest

Cargill's motion presents a factual attack on subject matter jurisdiction, referencing case documentation, transcripts of deposition testimony, and affidavits. Having considered the entirety of the parties' memoranda and evidentiary submissions, including the transcript of Mr. Fay's recent deposition testimony, and applicable law, the Court is persuaded, on the showing made, that Plaintiffs have established the Court's diversity of citizenship subject matter jurisdiction, pursuant to 28 U.S.C. §1332, by a preponderance of evidence. The Court reaches this conclusion for much the same reasons urged by Plaintiffs in their opposition memoranda.[7]

As stated above, Cargill's motion disputes Plaintiff's contention that Matthew Goitia was the sole member of Plaintiff ECLT, a limited liability company, at the time this suit was filed. on September 12, 2014.[8] More specifically, Cargill maintains that Mr. Fay, a Louisiana resident, also owned a 2.5% equity interest as of that date. Contrary to Cargill's assertion, however, the

---

[6] "Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson*, 645 F.2d at 415 (discussing "strict standard" from *Bell v. Hood,* 327 U.S. 678, 682 (1945)). "The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction." *Id.*

[7] See Rec. Docs. 180, 201, 236, and 360.

[8] See Rec. Doc. 1 at ¶2; Rec. Doc. 4 at ¶2; and Rec. Doc. 35 at ¶2.

deposition and affidavit testimony presented to the Court from the persons with first-hand involvement in some aspect of ECLT's "start up" (formation, executive staffing, financing, and business development) consistently support the notion that, as of September 12, 2014, no transfers of equity in the company to persons other than Mr. Goitia actually had occurred.  Instead, as of that date, the contemplated transfers remained inchoate, were subject to ongoing negotiations, and were contingent upon one or more suspensive conditions that had not been satisfied.[9]

With respect to Mr. Fay in particular, both he and Mr. Goitia testified that Mr. Fay did not want any equity ownership in ECLT, prior to it having secured funding, because he was not prepared to make a capital investment into the company and wanted to avoid any personal exposure for the company's activities.[10]  This prerequisite remain unsatisfied on the date this suit was filed.[11]  Further, the record indicates that Mr. Goitia and Mr. Fay contemplated any transfer of ownership interest to be set forth in a signed, written agreement.[12]  None of the numerous evidentiary

---

[9] See Rec. Doc. 180, Exh. 3, pp. 28-29, 30 ("the understanding was that work that he had performed and was continuing to perform would have earned him an opportunity in this project"), 31 ("This was at a future date to be granted with the condition that everyone continued to perform at a level that was commensurate with the to-be-distribution equity"),  and 465-466 ("So all of our discussions with those that were contributing to the project, so that they would not be exposed to any liability in the development of this, was that a point in time post funding . . . and the development of this[,] their equity would vest and they would – in other words it would be converted . . . .");  Rec. Doc. 360, Exh. B, pp. 379-380 (even if the ECLT project had gone forward, whether equity interests would have been transferred was at Mr. Goitia's discretion, and thus an assumed risk);  Rec. Doc. 349, Exh. I, pp. 17-18, 25, 42-43, 117-121;  Rec. Doc. 360, Exh. C, pp. 59-62;  Rec. Doc. 360, Exh. D, pp. 335-337, and 437;  Rec. Doc. 360, Exh. E, pp. 326-329.

[10] Rec. Doc. 349, Exh. I, pp. 17-18, 25, 42-43, 117-121; Rec. Doc. 180, Exh. 3, p. 465.

[11] See Rec. Doc. 180, Exh. 3, pp. 465-466;  Rec. Doc. 349, Exh. I, p. 25.

[12] See Rec. Doc. 180, Exh. 3, pp. 28-32, and 465-66;  Rec. Doc. 349, Exh. J;  Rec. Doc. 349, Exh. I, pp. 19-20, 31, 45-47, 64-65, 89, 103-104, 106, 115-120;  Rec. Doc. 349, Exh. M, p.2;  Rec. Doc. 349, Exh. R ("Because ECLT was a startup, I was offered a 2.5% share of Class B shares in ECLT. . . . No agreement was ever signed issuing any shares to me.");  Rec. Doc. 360, Exh. A. 2.

submissions the parties have made to the Court, however, include that signed writing, or even suggest that it exists. Nor is there any indication that Mr. Goitia and Mr. Fay ultimately agreed to dispense with having a written agreement. As set forth by Plaintiffs' memoranda, where a formal, written instrument is contemplated by the parties, and none exists, there is no enforceable contract under Texas law.[13] The same is true where an obligation is subject to a suspensive condition that is never satisfied.[14] Consequently, Mr. Fay's September 22, 2014 letter refers only to "any and all interest in [ECLT] that was *offered* to me; it does not or reference (or purport to renounce or return) an interest then *owned* by him.[15]

    Finally, the evidence Cargill touts in support of its motion is far from dispositive, particularly when considered in context and together with the other evidence discussed above. For instance, given the foregoing contingencies, it is evident that the various equity allocations referenced in Mr. Fay's notes of a telephone conferences on October 5, 2013 and January 12, 2014,[16] and email between Mr. Fay, Mr. Goitia, and/or Mr. Guma,[17] reflect various *proposed* ownership

---

[13]  See Rec. Doc. 360, p. 8 n. 40.

[14]  *Id.*

[15]  *See* Rec. Doc. 349, Exh. L (emphasis added). For instance, Mr. Fay's letter does not refer to "my share(s)" or "my equity interest" or "my membership interest" or "my ownership interest", or an interest that he "earned", or an interest that was "given to me," "conveyed to me," or "granted to me." *Id.*; *see also* Rec. Doc. 349, Exh. I, pp. 25-27, 38, and 63-64.

[16]  *See* Rec. Doc. 349, Exhs. M and N.

[17]  *See* Rec. Doc. 349, Exhs. B, C, D, E, K, and P; *see also* Rec. Doc. 349, Exh. I, pp. 65-66.

interests being considered by them, rather than a report of ownership percentages actually owned at that time.[18]

Cargill additionally references affidavits provided by two of its own in-house counsel, Todd Erickson and Brian Pioske, and their notes of telephone conversations with Mr. Fay on January 13, 2014, and September 22, 2014, respectively, asserting that Mr. Fay told them that he had a 2.5% or 2.0% ownership interest in ECLT.[19] As an initial matter, the notes are Mr. Erickson's and Mr. Pioske's records, not Mr. Fay's, and there is no indication that Mr. Fay had previously had an opportunity to review the notes for accuracy and completeness. Moreover, relative to his January 2014 conversation with Mr. Erickson, Mr. Fay testified that he does not "recall telling him that I actually owned a part of the company."[20] And, although Mr. Pioske's notes represent that, during the course of the September 22, 2014 telephone call, Mr. Fay told him: "I think I have an ownership interest, but if that . . .", the same notes represent that Mr. Fay also said: "I have not signed any partnership documents or other documents reflecting any ownership."[21] Mr. Fay's September 23, 2014 email to Mr. Pioske similarly states: "Because ECLT was a startup company I was offered a 2.5% share of Class B shares in ECLT. . . . No agreement was ever signed issuing any shares to me."[22]

---

[18] *See* Rec. Doc. 180, Exh. 3, pp. 27-34, p. 28 ("His ownership equity [was never] granted. . . . There was no equity agreement executed. . . . [There was no equity agreement] signed by anyone, period."), and pp. 465-66; *see also* Rec. Doc. 349, Exh. I, pp. 34-35, 38, 63, and 78-79.

[19] *See* Rec. Doc. 349, Exhs. M, N, Q, and S.

[20] *See* Rec. Doc. 349, Exh. I, p. 81-84.

[21] *Id.*, p. 92.; *see also* Rec. Doc. 349, Exh. S.

[22] *See* Rec. Doc. 349, Exh. R.

Furthermore, relative to his September 23rd email to Mr. Pioske,[23] and his September 22, 2014 letter to Mr. Goitia,[24] Mr. Fay testified that he had previously "ended [his] relationship" with Plaintiffs and "stepped away from the moment that [he] learned that [Plaintiffs, through Mr. Goitia,] were considering or looking at possibly filing a claim" against Cargill and LSR.[25]  In other words, according to Mr. Fay, the September 23, 2014 email, and September 22, 2014 letter were essentially written confirmations of verbal statements that Mr. Fay previously had made to Mr. Goitia, and actions taken by him, prior to September 12, 2014, when he learned that Plaintiffs, through Mr. Goitia, were considering filing the instant action against LSR and Cargill.[26]

Without live testimony, the Court is not in a position to fully evaluate the credibility of Mr. Fay, Mr. Goitia, Mr. Erickson, and Mr. Pioske relative to the communications occurring between them, their notes, and their deposition testimony and/or affidavit(s).  Nevertheless, when considered as a whole, the evidence establishes, by a preponderance, that Mr. Fay was *offered* an equity interest in ECLT.  The same is not true, however, with respect to actual ownership of that interest.

---

[23]     *See* Rec. Doc. 349, Exh. R., p. 1 ( "[W]hen I learned that Mr. Goitia was considering legal action, I immediately told him and the others that I was dealing with at ECLT that I would not participate in any way in any discussions about legal action, and that I would not be involved or have any financial interest in the outcome of any such decision.").

[24]     *See* Rec. Doc. 349, Exh. L ("I reiterate my longstanding position that I would not participate in any discussions, decisions, or the outcome, whatever that may be, of those companies' decision regarding legal action.").

[25]     *See* Rec. Doc. 349, Exh. I, pp. 89 and 94.

[26]     *See* Rec. Doc. 349, Exh. I, pp. 89, 92-97, 109-111, and 114-116.

B.  **Citizenship of LSR and Sugar Growers and Refiners, Inc. (SUGAR)**

As stated above, Cargill's motion additionally contends that diversity of citizenship jurisdiction is lacking here because Defendant LSR is considered a citizen of both Louisiana and Texas by virtue of the citizenship of its member, SUGAR.  Cargill maintains that SUGAR, because it is a "co-operative marketing association" under Louisiana law, LSA-R.S. 3:71, *et seq.*, must be treated as an unincorporated association with its citizenship being the same of all of its members, rather than an corporation, in determining whether it, and thus LSR, are Texas citizens for purposes of the subject matter jurisdiction granted by 28 U.S.C. § 1332 to citizens of diverse states.

Having carefully reviewed the parties' materials, and the authorities cited by them, including the pertinent provisions of Title 3, Chapter 2, of the Louisiana Revised Statutes, the Court disagrees.  Contrary to Cargill's assertion, it is not apparent to the Court that being classified as a cooperative marketing association under these statutory provisions necessarily renders a business organization either an incorporated entity or unincorporated entity.  Rather, it appears that the provisions of that chapter can apply to both types.[27]  Further, the "provisions of the general corporation laws" of Louisiana "and all powers and rights thereunder [] apply to the associations organized [under Title 3, Chapter 2], except where such provisions are in conflict with, or inconsistent with the express provisions of [that] Part." *See* La. R.S. 3:149.  Significantly, moreover, the statutes provide that "corporate existence shall begin" when the secretary of state records the "articles of association" and issues a certificate "of incorporation."  *See* La. R.S. 3:85.  Indeed, the

---

[27]     *See, e.g.,* LSA-R.S. 3:140 (referring to persons, firms, corporations, or associations); 3:125 (referring to the powers of "each association incorporated under this Part"); 3:122 (defining "member" to include "actual members of associations without capital stock and holders of common stock in associations organized with capital stock"; "association" as "any associations organized under this Part"; and "person" as including "individuals, firms, partnerships, corporations, and associations"); 3:127 (referring to "articles of association"); 3:128 (referring to "articles of incorporation").

record reflects that SUGAR was issued a "Certificate of Incorporation" on May 17, 2006, upon the filing of its "Articles of Incorporation of Sugar Growers and Refiners, Inc."[28]  On this showing, Cargill's alternative efforts to convince the Court that SUGAR and, thus, LSR share Texas citizenship with Plaintiffs, such that subject matter jurisdiction is lacking on these additional grounds, fall short.

      New Orleans, Louisiana, this 21st day of December 2016.

                                                **KURT D. ENGELHARDT**
                                                **United States District Judge**

**Clerk to Copy:**

U.S. Magistrate Judge Daniel E. Knowles, III

---

[28] *See* Rec. Doc. 180-8, p. 1 of 21 through 13 of 21.